## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RYAN MORRIS,** | : **CIVIL NO. 1:CV-04-1967** |
| **Plaintiff** | : |
| | : **(Complaint Filed 9/7/2004)** |
| **v.** | : |
| | : **(Judge Jones)** |
| **AGENT GARY LEGORE, et al.** | : |
| **Defendants** | : **FILED ELECTRONICALLY** |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE THE COMPLAINT

COMES NOW, Defendants Gary Legore, Sean Dowd, Rick Etzler and Gerard O'Callahan, through counsel, Assistant United States Attorney Stephen R. Cerutti II, and submit this Brief in Support of their Motion to Dismiss the above captioned action, or, in the alternative, to strike the complaint.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 3, 2004, plaintiff Ryan Morris filed a complaint in this Court pursuant to Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) alleging that defendants violated his rights under the United States Constitution during their investigation into a suspicious package found outside the Harrisburg Federal Building on July 13, 2004. On November 5, 2004, defendants filed a Motion to Dismiss or, in the alternative, to strike the complaint. This brief is submitted in support of that motion.

As this Court is aware, in a motion to dismiss for failure to state a claim, the Court must accept all factual allegations made by the complainant as true.  Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 77 (3rd Cir. 2003).  As such, this brief shall accept the factual averments made by plaintiff in his complaint as true, even though defendants do not, in any way, concede that they are.

## QUESTIONS PRESENTED

1)   Whether plaintiff has put forth sufficient facts to support a claim of retaliation amounting to a violation of his First Amendment rights under the United States Constitution.
     Suggested Answer:          Negative.

2)   Whether plaintiff can maintain an action for defamation as part of this Bivens action.
     Suggested Answer:          Negative.

3)   Whether defendants are entitled to qualified immunity from suit.
     Suggested Answer:          Affirmative.

4)   Whether the complaint should be stricken pursuant to Fed. R. Civ. P. 12(f).
     Suggested Answer:          Affirmative.

## DISCUSSION

## I.   <u>Plaintiff's Complaint Fails to State a Claim for Which Relief May Be Granted, As Such, the Complaint Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6).</u>

In his complaint, plaintiff first alleges that defendants violated his rights under the United States Constitution by retaliating against him for "speak[ing] out

on matters of public concern." Complaint p. 3, ¶ 6; p. 13, ¶¶ 47-48; p. 15., ¶ 55.

Second, he alleges that the defendants defamed him. Complaint p. 3, ¶ 7; p. 15., ¶

55. As discussed below, even if all the facts put forth by plaintiff in his complaint

are taken as true, he has failed to state an actionable claim under Bivens.

> **A.      Plaintiff's claim of retaliation against him in violation of his first amendment rights under the United States Constitution.**

Plaintiff's first alleges a violation of his First Amendment rights as a result

of retaliation by defendants for his "speak[ing] out on matters of public concern."

A plaintiff seeking to show a constitutional violation based on retaliation must

show three things:  1) constitutionally protected conduct, 2) adverse action

sufficient to deter a person of ordinary firmness from exercising his constitutional

rights, and 3) a causal link between the exercise of constitutional rights and the

adverse action.  See Mitchell v. Horn, 318 F.3d 523, 530 (3rd Cir. 2003) (applying

elements in Bivens case involving a prisoner); Rauser v. Horn, 241 F.3d 330, 333

(3rd Cir. 2001) (same); Sarullo v. United States Postal Service, 352 F.3d 789, 800

(3rd Cir. 2003) (applying elements in Bivens case involving employment).

> *1.      Plaintiff's Conduct was not constitutionally protected*

In applying this test to the instant case, plaintiff must first prove that he

engaged in constitutionally protected conduct.  It is difficult to determine what

constitutionally protected conduct Plaintiff alleges he was engaged as he relies on broad, conclusory statements in this regard.  Plaintiff simply claims that he "has a right to speak out on matters of public concern", Complaint, p. 3, ¶ 6, and that his actions were constitutionally protected when he "produced a report" and "found evidence" of smokeless powder.  Complaint, p. 13, ¶ 47.  It is a stretch, however, to assert that performing a test for explosives as part of one's job and producing the results, is constitutionally protected speech.  There is simply no speech involved in such an action.  It is the performance of a scientific test, and thus plaintiff has failed to establish the first element necessary in a retaliation claim.  See Ambrose v. Township of Robinson, Pennsylvania, 303 F.3d 488, 495 (3rd Cir. 2002) ("there can be no First Amendment claim when there is no speech.")

       *2.     The Plaintiff suffered no adverse action motivated by bad faith.*

Plaintiff must also prove an adverse action taken by defendants to deter plaintiff from exercising his constitutional rights.  In the instant case, plaintiff alleges that he was improperly investigated by the defendants.

Plaintiff avers no fact that would support his claim that the investigation undertaken by the defendants was motivated by an improper purpose.  He relies instead on his own unfounded speculation, and statements that could only be considered "fact" if one believes that the Plaintiff is capable of reading

defendants' minds and knowing their thoughts.  See Complaint, p. 5-7, ¶¶ 20 - 21, 26.

Moreover, plaintiff undermines his own case through his allegations. Throughout the complaint, plaintiff assails the defendants' lack of experience, ignorance and incompetence in the area of bomb disposal and explosives. Complaint, pp. 9-10, ¶¶ 35, 37, 39.  To the extent that any actions taken by defendants arose from such ignorance, incompetence or lack of experience, such actions cannot form the basis of a Bivens complaint.  None of these would implicate a deliberate abuse of governmental power, rather they would indicate negligence, and negligence cannot serve as the basis for a Bivens claim. See Daniels v. Williams, 474 U.S. 327 (1986); Sterling v. United States, 85 F.3d 1225, 1227-1228 (7th Cir. 1996); Sellars v. Baer, 28 F.3d 895, 902-903 (8th Cir. 1994).

>        3.        *Plaintiff can show no causal connection between his alleged*
>                  *protected conduct and the alleged adverse action.*

The final element plaintiff must show is that the actions taken by the defendants were a direct result of plaintiff's constitutionally protected conduct. Plaintiff again fails to satisfy his burden on this count, relying instead on the conclusory statement that since plaintiff's test results were "suggestive" of defendants' incompetence, they sought to deprive him of his rights.  Complaint, p.

13, ¶ 48.  Plaintiff produces no facts to back up this theory.  Plaintiff does relate

his version of the facts regarding the disruption operation, his questioning, and the

manner in which the defendants conducted their investigation, but he asserts no

facts that would demonstrate that the investigation was not based on actual

suspicions regarding possible contamination by plaintiff.  Once again, as

mentioned above, Plaintiff's arguments actually undermine his own case.  If, as

Plaintiff contends, defendants would not have pursued this investigation but for

their inexperience in these types of investigations then the investigation was not a

deliberate attempt to retaliate against Plaintiff for his conduct on July 13, 2004.

As such this Court should dismiss Plaintiff's retaliation claims.

**B.      Plaintiff's claims for defamation.**

The second part of Plaintiff's claim rests on the theory of defamation.

In support of this claim, plaintiff alleges varied damages ranging from losing

overtime opportunities, to decreased opportunities for advancement, to a decrease

in his operational duties.  See Complaint p. 14, ¶¶ 50-53.[1]

Even if plaintiff *can* prove that he has been defamed (and defendants do not

concede that they have defamed him) and even if plaintiff *can* show that as a result

---

[1]      The Court should note that the Complaint contains two paragraphs numbered "53".  For the purposes of this reference, both of these paragraphs should be considered part of the citation.

of such defamation he has suffered monetary damage, a <u>Bivens</u> action cannot rest upon that basis.  In <u>Siegert v. Gilley</u>, 500 U.S. 226 (1991), the United States Supreme Court, citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976), made this clear.

In <u>Siegert</u>, the plaintiff sought damages related to his loss in reputation and employment opportunities when a past employer made disparaging remarks about him to a potential employer.  <u>Id.</u>, 500 U.S. at 226.  The Court held that "so long as [out-of-pocket loss] damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law, but it is not recoverable in a <u>Bivens</u> action." <u>Id.</u>, 500 U.S. at 234.  The Court explained that the decision does not turn on the state of mind of the defendants, but rested instead on the fact that there is no constitutional protection for the interest in reputation.  <u>Id.</u>

Since, under <u>Siegert</u> and <u>Davis</u>, defamation, even if it results in monetary loss, is not a violation of a plaintiff's constitutional rights, allegations of defamation cannot form the basis of <u>Bivens</u> actions which can only be brought to address tortious interference with such rights.  Accordingly, to the extent that plaintiff's complaint alleges defamation, it must be dismissed.

> **C.**    **Even if this Court finds that, in the case of either claim discussed above, Plaintiff has adequately plead a constitutional tort, defendants are nonetheless entitled to qualified immunity from suit.**

While a plaintiff may maintain an action for damages against a federal employee personally, the Supreme Court has held that federal executive officials are entitled to qualified immunity from personal liability for civil damages. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Saucier v. Katz, 533 U.S. 194 (2001).

In Harlow, the Court stated that "[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. The plaintiff has the burden of showing that the defendants violated clearly established Constitutional rights. McLaughlin v. Watson, 271 F.3d 566, 570 (3rd Cir. 2001).

The Harlow rule on qualified immunity was further clarified by the Supreme Court in Anderson v. Creighton, 483 U.S. 635 (1987), as follows:

> [W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, ... assessed in light of the legal rules that were "clearly established" at the time it was taken.

Id. at 639 (citation to Harlow omitted). Both questions are for the court and this standard "gives ample room for mistaken judgments." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

In <u>Saucier</u> the Supreme Court held that lower courts must first look to whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at 200-01.  Only if a constitutional violation could be made out from the plaintiff's allegations does the court ask "whether the right in question was clearly established." <u>Id.</u>  The second inquiry is not taken in a general context, but must be "undertaken in light of the specific context of the case." <u>Id.</u>  Thus, if the officer was not "on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Id.</u> (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Malley v. Briggs</u>, 475 U.S. 335 (1986).

The contours of the right that the plaintiff claims were violated must be sufficiently clear so that a reasonable government official would understand that his or her conduct violated the plaintiff's constitutional rights.  Officers who reasonably but mistakenly conclude their conduct was lawful *are* entitled to immunity.  <u>Anderson</u>, 483 U.S. at 641;  <u>Hunter</u>, 502 U.S. at 228-229.

<u>Harlow</u>'s other important point is that, when analyzing a federal officer's actions, those actions are analyzed using an objective standard.  As the Fifth Circuit has observed, the holding in <u>Harlow</u> deleted subjective considerations from the qualified immunity analysis, bringing about a "quiet revolution in the law of

official immunities." <u>Saldana v. Garza</u>, 684 F.2d 1159, 1163 n. 15 (5th Cir. 1982); see also <u>Anderson</u>, 483 U.S. at 645 (stating that <u>Harlow</u> "completely reformulated qualified immunity along principles not at all embodied in the common law").  As a result, the modern qualified immunity defense is wholly objective and *no inquiry into a defendant's subjective good faith is appropriate*. <u>See</u> <u>Mitchell v. Forsythe</u>, 472 U.S. 511, 518 (1985) (<u>Harlow</u> "purged the qualified immunity doctrine of its subjective components"); <u>Davis v. Scherer</u>, 468 U.S. 183, 191 (1984) (the <u>Harlow</u> Court "rejected the inquiry into state of mind in favor of a wholly objective standard"). This is true even when the official's subjective intent is an essential part of plaintiff's affirmative case. <u>See</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 (1998) (qualified immunity "may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated," because "evidence concerning the defendant's subjective intent is simply irrelevant to that defense").

As a result of the above case law, there can be little question that the defendants in this case are entitled to qualified immunity.  As was discussed above, plaintiff has not initially shown that his constitutional rights were violated. Even if this Court determines that he has met this burden, however, none of the actions described by plaintiff that he alleges defendants undertook can be said to have violated a specific, established, well known constitutional right.

-10-

Specifically, plaintiff avers that: a) the defendants questioned him and administered a polygraph test (which plaintiff consented to), Complaint p. 7, ¶ 26; b) defendants failed to alert plaintiff that the polygraph results could not be used in court, Complaint p. 12, ¶ 43; c) defendants removed plaintiff from the JTTF because of his poor polygraph results, Complaint p. 8, ¶ 29; and d) defendants alerted plaintiff's employers of their concerns both regarding the polygraph and the evidence they had collected, Complaint pp. 8, 10, ¶¶ 30-31, 39.

Counsel for the defense is unaware of any statute or case law that holds that FBI agents are violating a suspect's constitutional rights by asking that suspect questions or administering a voluntary polygraph test, and as such any constitutional right this Court might feel was violated in this instance cannot be said to have been so clearly established as to defeat qualified immunity.

Similarly, counsel for the defense is unaware of any statute or case law holding that FBI agents, when confronted with an officer which they believe *may* have altered a potential crime scene, must nonetheless continue to utilize the officer under question and avoid alerting that officer's employer of their concerns. Quite to the contrary, the failure of the FBI to disclose such information could constitute a violation of the constitutional rights granted to accused criminals under Brady v. Maryland, 373 U.S. 83 (1963).  In short, Brady, as this Court is

well aware, requires prosecutors to turn over to an accused any evidence favorable to them.  Under plaintiff's theory of this case, FBI agents confronted with a suspected instance of contamination by an officer would be forced into choosing between violating the rights of the potentially wrongfully accused by remaining silent, or exposing themselves to suit for violating the suspected contaminating officer's rights if they choose to disclose their suspicions.  No statute or case law exists imposing such a choice on law enforcement officers.

There is little doubt that plaintiff paints a vivid picture of alleged bad faith in defendants' investigation of him.  While defendants contend the allegations are devoid of any factual support, in the end, such allegations are irrelevant to the qualified immunity analysis.  The only appropriate question is whether the investigation of plaintiff was conducted in an objectively reasonable manner in light of clearly established constitutional law at the time of the investigation. There is no indication that it was not, and therefore, all of the defendants are entitled to qualified immunity, and plaintiff's claims should be dismissed.

## II.    **Even if this Court Denies Defendants' Motion to Dismiss, the Complaint Should be Struck Pursuant to Federal Rule of Civil Procedure 12(f).**

Federal Rule of Civil Procedure 8 sets forth the manner in which a plaintiff should present his or her claims within a complaint.  Fed. R. Civ. P. 8(a) requires

"short and plain" statements regarding the issues of jurisdiction, grounds for relief and the judgment sought.  These strictures are enhanced further by Fed. R. Civ. P. 8(e)(1) which requires that "[e]ach averment of a pleading shall be simple, concise and direct."  Nowhere within these rules can be found any basis for allowing a plaintiff to engage in name-calling or other unwarranted, unsupported, irrelevant and speculative attacks upon a defendant.  Despite that fact, plaintiff's complaint is rife with such attacks, and thus this court should strike the complaint *in toto*.

Plaintiff's attacks commence on the first page of the complaint, in the first averment.  Rather than simply lay out the basis for his case in a "simple, concise and direct" manner, he elects to both characterize the defendant's alleged acts as actions intended to "cover up [defendants'] own inadequacies" *and* allege the complicity of unnamed other individuals  Complaint, p. 1, ¶ 1.

Plaintiff continues this style throughout the complaint.  Plaintiff claims to be the subject of a "pretextual investigation" as part of a "disingenuous cover-up" by federal agents avoiding their responsibilities, Complaint, p. 3,  ¶ 6; claims that the defendants "knew that they had totally failed in their responsibilities", Complaint, p. 6,  ¶ 21;  characterizes the defendants as "incompetent", Complaint, p. 6,  ¶ 23,  pp. 9-11, ¶ 35 & 39; and engages in attacks on FBI methodology in general.  Complaint pp. 12-13,  ¶ 44.  This list is not exhaustive, but does show

that, throughout the complaint, plaintiff has not simply sought to present factual

allegations, but also seeks to smear the defendants personally and professionally.

It is impossible to escape the irony that in a complaint where plaintiff claims that

he has been defamed, he engages in the very act that he condemns.

The defendants request that this Court strike the complaint filed by plaintiff

pursuant to Fed. R. Civ. P. 12(f), which states, in pertinent part, that "the court

may order stricken from any pleading . . . any redundant, immaterial, impertinent

or scandalous matter."  Taking such action is wholly within the discretion of this

Court.  See United States v. Dico Inc., 266 F.3d 864 (8th Cir. 2001) and Alvarado-

Morales v. Digital Equipment Corp., 843 F.2d 613, 617-618 (1st Cir. 1988).

In situations similar to these, courts have, at the very least, stricken

offending paragraphs.  See  Talbot v. Robert Matthews Dist. Co., 961 F.2d 654,

664-665 (7th Cir. 1992) (striking factually unsupported allegations that defendants

intentionally caused a salmonella outbreak or allowed it to continue in order to

consummate a fraudulent scheme against the plaintiffs.); Alvarado-Morales, 843

F.2d at 617-618 (striking comparisons of employment conditions to "concentration

camps", "brainwashing" and "torture"); Hughes v. Kaiser Jeep Corp., 40 F.R.D.

89, 93 (D.S.C. 1966) (striking repeated references to a car at issue in a complaint

as a "deathtrap"); and Global View LTD v. Grand Central Basin Exploration,

-14-

LLC, 288 F.Supp.2d 473, 481 (S.D.N.Y. 2003) (striking characterizations of defendants' actions  as "fraudulent, self-dealing, malicious and otherwise outrageous misconduct").

It is the reasoning of the Global View court which captures the essence this matter.  In striking an offending paragraph that went beyond the simple, concise statements of fact required by the rules, the Global View court observed that the stricken paragraph "amount[ed] to nothing more than name calling, and did not contribute to Global View's substantive claims. Whether or not Global View ultimately prevails depends on whether [defendants] committed the particular torts alleged, not on whether they are 'unscrupulous' people or 'con artists.'" Similarly, this case will not turn on the alleged failure of the defendants to protect the Federal Court Building, the FBI's interviewing techniques or even the motives behind the defendants' alleged actions.  All that matters is what actions were actually taken and whether they violated plaintiff's well established constitutional rights.  Plaintiff's pervasive, incendiary and baseless name-calling does nothing to further his argument.  As such the complaint should be stricken.

## CONCLUSION

For the above stated reasons, defendants request that this Court dismiss the above-captioned action, or, in the alternative, strike the complaint.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

/s/ Stephen R. Cerutti II
STEPHEN R. CERUTTI II
Assistant United States Attorney
PA Bar # 90744
Stephen.Cerutti@usdoj.gov
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA 17108-1754
Phone: (717) 221-4482
Dated:   November 10, 2004          Fax: (717)221-2246

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RYAN MORRIS,** | : **CIVIL NO. 1:CV-04-1967** |
| **Plaintiff** | : |
| | : **(Complaint Filed 9/7/2004)** |
| **v.** | : |
| | : **(Judge Jones)** |
| **AGENT GARY LEGORE, et al.** | : |
| **Defendants** | : **(Electronically Filed)** |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

The undersigned hereby certifies that on November 10, 2004, she served a copy of the attached

### DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE THE COMPLAINT

by electronic service pursuant to Standing Order 03-1, ¶12, to the following:

Addressee:
Don Bailey
Attorney for Plaintiff
4311 N. Sixth Street
Harrisburg, PA 17110

Dated:  November 10, 2004                    s/ Cindy Long
                                            CINDY LONG
                                            United States Attorney's Office